UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PRN HEALTH SERVICES LLC,

        Plaintiff,

v.                                       Case No.  8:21-cv-02471-TPB-SPF

NURSES PRN OF FLORIDA, LLC, PRO
MED HEALTHCARE SERVICES, LLC,
and JOHN SATERBO,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

Before the Court is Plaintiff's Motion for Default Judgment Against All Defendants (Doc. 26).  The undersigned recommends that the Court grant Plaintiff's motion for default judgment as to all counts in the Complaint (Doc. 1), enjoin Defendants from infringing Plaintiff's trademarks, award Plaintiff $15,000.00 in statutory damages and $502.00 in costs, and deny without prejudice Plaintiff's request for $8,670.00 in attorney's fees.

## I.    Background

Plaintiff PRN Health Services, LLC, a Wisconsin-based company, has provided temporary nursing, employment agency, and staffing agency services for healthcare professionals since the 1970s (Doc. 1 at ¶¶ 9, 14).  Plaintiff uses "Nurses PRN" and "PRN" as word marks (the "PRN Marks") to identify and market its business (*Id.* at ¶ 1).  In 1983, it registered the "PRN" mark with the United States Patent and Trademark Office

(USPTO Registration No. 1,242,392), and in 1990 it registered the "Nurses PRN" mark (USPTO Registration No. 1591419) (*Id.* at ¶¶ 15-16 and Exh. 1).

Defendants Nurses PRN of Florida, LLC and Pro Med Healthcare Services, LLC, Florida-based companies, merged in 2021 (Doc. 26, Exh. 2).  Corporate records filed with the Florida Department of State list Defendant John Saterbo as the manager of both entities at the time of merger (Doc. 1 at ¶ 13; Doc. 26, Exh. 1 at ¶ 4, Exh. 2).  To advertise their temporary nursing services, Defendants use or have used "The Nurses PRN of Florida" and "Nurses PRN" as marks.  Defendants have a "Nurses PRN" Facebook page, they maintain the @nursesprnfl Instagram account, and they registered and utilize the domain names thenursesprnofflorida.com and nursesprn.net  (*Id.* at ¶¶ 21, 23, 25, 27, 32, 33; Doc. 26, Exh. 3).[1]  A Facebook post on the Nurses PRN page states: "NursesPRN/ProMed is seeking all Nurses and EMTs[.]" (*Id.* at ¶¶ 28-29).  Another post lists the same phone number as the number listed on thenursesprnofflorida.com and includes staff@nursesprn.net as a contact email address (*Id.* at ¶¶ 28, 30).  The @nursesprnfl Instagram page includes posts such as, "We are seeking a ICU RN" and "Nurses we need you." (*Id.* at ¶ 35).  It lists the website thenursesprnofflorida.com near the top of its page (*Id.* at ¶ 36).

---

[1]  Plaintiff submitted the results of an ICANN WHOIS search on each domain (Doc. 26, Exh. 1 at ¶ 5, Exh. 3).  Defendant Pro Med Healthcare Services, LLC registered the domain nursesprn.net in 2006, and the domain thenursesprnofflorida.com was registered to a proxy in 2017 (*Id.* at ¶¶ 24, 32; Doc. 26, Exh. 3).  The online content of the two companies overlaps – a post on the Nurses PRN Facebook page lists the same phone number as thenursesprnofflorida.com (*Id.* at ¶ 28; Doc. 26, Exh. 3) – and the companies legally merged in early 2021, according to the Florida Department of State (Doc. 26, Exh. 2).

Plaintiff sent each Defendant a cease-and-desist letter by regular and certified mail on August 5, 2021 (*Id.* at ¶ 39).  The letter advised Defendants that Plaintiff's PRN Marks are registered with the USPTO and that Defendants' use of the Nurses PRN and The Nurses PRN of Florida marks is likely to cause confusion (*Id.* at ¶¶ 40-41).  In response, Plaintiff received an email from Joanna Robinson from the domain promedhs.com (*Id.* at ¶ 45).[2]

On August 18, 2021, someone purporting to be a former accountant at Defendants' West Palm Beach office posted on Plaintiff's glassdoor.com page a pros and cons list about working for Defendants (*Id.* at ¶¶ 37-39).  The pros were "meeting new employee every 2 months due to the fact that turn-over is extremely high.  Employees get fired left and right." (*Id.* at ¶ 39).  The cons were "[t]he owner was the worst. . . . She will look for any reason to fire and let you go.  It's like the blind leading the blind." (*Id.*).  Plaintiff responded to this post, explaining to the disgruntled former employee that he or she had posted on the wrong page: "We are located in WI and MO and our owner is a male.  One of our core values is integrity and honesty." (*Id.*).

Plaintiff filed its Complaint a month later (Doc. 1), alleging federal trademark infringement under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1) (Count I); unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count II); cybersquatting in violation of the Anticybersquatting Consumer Protection Act ("ACPA"), Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d) (Count III); counterfeiting under section 32(a) of the Lanham Act, 15 U.S.C. § 1114(1) (Count IV);

---

[2]  Plaintiff has not provided any more information about the email or Ms. Robinson.

and violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201-501.213 (Count V).  When Plaintiff filed its Complaint, Defendants' Nurses PRN Facebook and Instagram accounts and the domain thenursesprnofflorida.com were still active, and the email tag @nursesprn.net was listed on Defendant Pro Med Healthcare Services, LLC's website (*Id.* at ¶¶ 46-48).

Plaintiff executed service on Defendants (Docs. 18-20).  Defendants did not respond to Plaintiff's Complaint, and on April 8, 2022, the Clerk of Court entered a default against each Defendant under Rule 55(a) (Docs. 23-25).  Now, Plaintiff moves for a default judgment against Defendants under Rule 55(b)(2), seeking statutory damages, attorney's fees and costs, and a permanent injunction barring Defendants from using the marks The Nurses PRN of Florida and Nurses PRN (Doc. 26).  Defendants have not responded to Plaintiff's motion for default judgment, and the time to do so has expired.

## II.    Standard of Review

"When a defendant has failed to plead or defend, a district court may enter judgment by default."  *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244 (11th Cir. 2015) (citing Fed. R. Civ. P. 55(b)(2)).  With the clerk's entry of a default under Rule 55(a), a defendant is deemed to admit a plaintiff's well-pleaded allegations of fact.  *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007) (citation omitted).[3]  Before entering a default judgment under Rule 55(b), a district court must ensure that the well-pleaded allegations in the complaint state a substantive cause of action and that a

---

[3]   Unpublished opinions are not considered binding precedent but may be cited as persuasive authority.  11th Cir. R. 36-2.

substantive, sufficient basis exists in the pleadings for the relief the plaintiff seeks. *Id.*; *see also Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005) (defaulted defendant deemed to admit well-pleaded factual allegations but "is not held to admit facts that are not well-pleaded or to admit conclusions of law.") (citation and quotations omitted). Entry of a default judgment under Rule 55(b) is warranted only where a sufficient basis exists in the pleadings. *Surtain*, 789 F.3d at 1245 (citation omitted).

Courts assess pleadings by a standard "akin to that necessary to survive a motion to dismiss for failure to state a claim." *Id.* Namely, a court may enter a default judgment only where a pleading contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The district court wields wide discretion in entering a default judgment. *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1576 (11th Cir. 1985).

### III. Discussion[4]

#### A. Trademark Infringement

In Count I, Plaintiff alleges trademark infringement under 15 U.S.C. § 1114(1)(a) (Doc. 1 at ¶¶ 54-68). Liability for trademark infringement occurs when a person "use[s]

---

[4] Pursuant to the Servicemembers Civil Relief Act, 50 U.S.C. § 3903(b)(1), Plaintiff's counsel filed a declaration stating he obtained a Department of Defense Manpower Data Center report indicating that Defendant John Saterbo is not on active-duty status with any branch of the United States military as of April 2022 (Doc. 26, Exh. 1 at ¶ 3).

in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark" which "is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). "To prevail on a trademark infringement claim a plaintiff must demonstrate that (1) its mark has priority, (2) defendant used its mark in commerce, and (3) defendant's mark is likely to cause consumer confusion." *Petmed Express, Inc. v. Medpets.com, Inc.*, 336 F. Supp 1213, 1217 (S.D. Fla. 2004) (citing *Int'l Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc.*, 303 F.3d 1242 (11th Cir. 2002)).

Plaintiff satisfies these elements. First, Plaintiff's marks have priority. It has marketed and sold its healthcare employment services since the 1970s, and it registered the PRN Marks in 1983 (PRN) and 1990 (Nurses PRN) (Doc. 1, Exh. 1). The registration certificates attached to Plaintiff's Complaint are prima facie evidence of Plaintiff's ownership of the PRN Marks and their validity (*Id.*). *See* 15 U.S.C. § 1057(b); *Sound Surgical Techs., LLC v. Leonard A. Rubinstein, M.D., P.A.*, 734 F.Supp.2d 1262, 1269 (M.D. Fla. 2010). The corporate Defendants, on the other hand, were formed in 2004 (Pro Med Healthcare Services, LLC) and 2006 (Nurses PRN of Florida, LLC), and began using the Nurses PRN and The Nurses PRN of Florida marks after that (Doc. 26, Exh. 2). Second, Plaintiff has established that Defendants used the marks (or a "colorable imitation" of the marks, 15 U.S.C. § 1114(1)(a)) in commerce – in Defendants' company name, registered domain names, email addresses, and social media sites (*see* Doc. 1 at ¶¶ 23-37). Third, regarding likelihood of confusion, the PRN Marks are identical or subsumed within Defendants' marks, both Plaintiff and Defendants are in the healthcare staffing business, and there was an instance of actual confusion in August 2021 (Defendants' former

employee's glassdoor.com post), after Plaintiff sent its cease-and-desist letters.  And, by virtue of their default, Defendants admit their use of The Nurses PRN of Florida and Nurses PRN marks is likely to cause consumer confusion as to whether Plaintiff and Defendants are affiliated.  *PetMed Express*, 336 F.Supp.2d at 1218 (finding that default itself establishes likelihood of confusion).  Plaintiff is entitled to a default judgment on Count I.

B. <u>Unfair Competition</u>

In Count II, Plaintiff alleges unfair competition under 15 U.S.C. § 1125(a) (Doc. 1 at ¶¶ 69-75). To establish Defendants' liability, Plaintiff must show "(1) it had rights to the mark at issue, and (2) that the defendant adopted a mark or name that was the same, or confusingly similar, to plaintiff's mark such that consumers were likely to confuse the two." *PetMed Express*, 336 F. Supp at 1217; *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1346 (11th Cir. 2012).  Plaintiff must establish that Defendants adopted a mark confusingly similar to Plaintiff's mark such that there is a likelihood of confusion.  *See Advance Magazine Publishers, Inc. v. Chic USA, Inc.*, No. 2:20-cv-193-SPC-NPM, 2021 WL 664138, at * 3 (M.D. Fla. Feb. 2, 2021), *report and recommendation adopted,* 2021 WL 662234 (M.D. Fla. Feb. 19, 2021).

The elements of a federal unfair competition claim are nearly identical to those necessary to allege trademark infringement, but unfair competition also "covers false advertising or description whether or not it involves trademark infringement."  *Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1181 (11th Cir. 1994).  If an unfair competition claim is based on infringement, as it is here, the elements "are the same" and the claim is "practically identical to an infringement claim."  *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*,

889 F.2d 1018, 1026 n. 14 (11th Cir. 1989).  Consequently, the set of facts that enables Plaintiff to recover for trademark infringement under 15 U.S.C. § 1114(a)(1) also results in its recovery for unfair competition under 15 U.S.C. § 1125(a).  *See Babbit*, 38 F.3d at 1181.  Plaintiff is entitled to a default judgment on Count II.

> C.  Cybersquatting

In Count III, Plaintiff alleges violations of the ACPA, 15 U.S.C. § 1125(d) (Doc. 1 at ¶¶ 76-86).  The ACPA provides:

> A person shall be liable in a civil action by the owner of a mark ... if ... that person
>
> (i)     Has a bad faith intent to profit from that mark ...; and
> (ii)    Registers, traffics in, or uses a domain name that ... in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark.

15 U.S.C. § 1125(d)(1)(A); *see Jysk Bed'N Linen v. Dutta-Roy*, 810 F.3d 767, 775 (11th Cir. 2015).  "Cybersquatting is a form of trademark misuse."  *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009).  Liability for federal cybersquatting occurs when a plaintiff proves "(1) its mark is a distinctive or famous mark entitled to protection, (2) the defendant's domain names are identical or confusingly similar to the plaintiff's marks, and (3) the defendant registered the domain names with the bad faith intent to profit from them."  *Royal Palm Props., LLC v. Premier Estate Props.*, No. 10-80232-CV-COHN, 2010 WL 1524720 at *7 (S.D. Fla. Apr. 15, 2010) (quoting *PetMed Express*, 336 F. Supp 2d at 1218).

Taking Plaintiff's well-pleaded allegations as true, Defendants are liable for cybersquatting.  First, Plaintiff's registration of the PRN Marks establishes a rebuttable

presumption that they are distinctive. *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1357 n.3 (11th Cir. 2007); *see also PetMed Express*, 336 F.Supp.2d at 1219 ("Plaintiff has established the distinctiveness of its trademarks not only through Defendant's default, but also having registered the marks."). Defendants admit Plaintiff's allegation that "[t]he consuming public recognizes the PRN Marks and associates them with Plaintiff." (Doc. 1 at ¶¶ 58, 59, 81). Second, Defendants registered and controlled the confusingly similar domains of thenursesprnofflorida.com and nursesprn.net, which include the names of Plaintiff's protected marks (Doc. 1 at ¶ 78; Doc. 26, Exh. 3).

Regarding the third element, there are nine non-exclusive factors courts consider when determining whether a defendant registered a domain name in bad faith. These factors are whether the alleged cybersquatter has:

> (1) Intellectual property rights in the domain name; (2) used a domain name that consists of the legal name of a person; (3) used a domain name previously in connection with the bona fide offering of goods or services; (4) bona fide noncommercial or fair use of the mark; (5) intends to divert customers from the mark owner's location to a site that could harm the good will represented by the mark; (6) offered to sell the domain name to the mark owner; (7) provided material and false contact information when registering for the domain name; (8) registered or acquired multiple domain names which he knows are identical or confusingly similar to the marks of others; or (9) used a domain name that incorporates a distinctive or famous mark.

*Hunter Residential Servs., LLC v. AAA Randpro Plumbing, Inc.*, 8:16-cv-01311-CEH-TGW, 2017 WL 1987247, at * 4 (M.D. Fla. Feb. 21, 2017) (quoting *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 509 F. Supp. 2d 1337, 1348 (N.D. Ga. 2007)).

Weighing these factors, the undersigned concludes Defendants possessed the requisite bad faith for cybersquatting. Again, Defendants' domains thenursesprnofflorida.com and nursesprn.net incorporate Plaintiff's distinctive marks and

are confusingly similar to them.  Defendants admit they intended to profit from their use of these infringing domains by diverting Plaintiff's potential customers to Defendants' services (Doc. 1 at ¶ 83).  Defendants continued to use the domains after Plaintiff served them with cease-and-desist letters. *See Hunter*, 2017 WL 1987247, at *4-5 (granting default judgment motion and finding that defendant had the requisite bad faith for cybersquatting when it continued to use plaintiff's protected mark after notice of infringement).  And Defendants chose not to respond to this suit.  So, even if they did not possess the requisite bad faith intent when they began using the infringing domain names, once Plaintiff put them on notice, Defendants' continued use of the domain names knowing that they are confusingly similar to Plaintiff's PRN Marks indicates bad faith. *Id.*; *see also Sound Surgical Techs.*, 734 F.Supp.2d at 1277 ("bad faith intent to profit from a domain name can arise either at the time of the registration [of the domain] or at any time" thereafter); *Colonial Van Lines, Inc. v. Colonial Moving & Storage, LLC*, No. 20-CIV-61255-RAR, 2020 WL 6700449, at *3 (S.D. Fla. Oct. 20, 2020) (same).  Plaintiff is entitled to default judgment on Count III.

### D.  Counterfeiting

In Count IV, Plaintiff alleges counterfeiting under 15 U.S.C. § 1114(1) (Doc. 1 at ¶¶ 87-96).  Plaintiff must show that Defendants (1) infringed on Plaintiff's trademark in violation of 15 U.S.C. § 1114(1)(a), and (2) "intentionally used a mark, knowing such mark is a counterfeit mark." *Quincy Bioscience, LLC v. Stein*, No. 8:17-cv-984-T-27-JSS, 2017 WL 10277184, at *3 (M.D. Fla. Nov. 21, 2017) (quoting *Babbit*, 38 F.3d at 1181), *report and recommendation adopted,* 2017 WL 10277184 (M.D. Fla. Dec. 7, 2017).

Because the Court has determined that Defendants infringed Plaintiff's marks under 15 U.S.C. § 1114, Plaintiff satisfies the first element of its counterfeiting claim. Regarding the second element, Defendants admit (through their default) they intentionally used their infringing marks despite knowing they were counterfeit and despite Plaintiff notifying them of their infringing behavior (*Id.* at ¶¶ 62, 93).  *See PedMed Express,* 336 F.Supp.2d at 1218 (willfulness may be inferred from defendant's default) (citing *Arista Records, Inc. v. Beker Enter., Inc.*, 298 F. Supp. 2d 1310, 1313 (S.D. Fla. 2003)); *Louis Vuitton Malletier & Oakley v. Viet*, 211 F.Supp.2d 567, 583 (E.D. Pa. 2002) ("Willfulness can be inferred by the fact that a defendant continued infringing behavior after being given notice.").   Indeed, Defendants admit they "advertised and offered their counterfeit services for sale using the PRN Marks with the intention of misleading, deceiving or confusing consumers as to the origin of its goods and of trading on Plaintiff's reputation and goodwill." (Doc. 1 at ¶ 93).  Plaintiff is entitled to default judgment on Count IV.

E.  <u>FDUTPA</u>

In Count V, Plaintiff alleges Defendants violated FDUTPA, Fla. Stat. §§ 501.201-501.13 (Doc. 1 at ¶¶ 97-100).  FDUTPA's purpose is to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).  A consumer FDUTPA claim has three elements: (1) a deceptive or unfair practice in the course of trade or commerce; (2) causation; and (3) actual damages.  *See KC Leisure, Inc. v. Haber*, 972 So.2d 1069, 1073 (Fla. 5th DCA 2008); *Rollins, Inc. v. Butland*, 951 So.2d 860, 869 (Fla. 2d DCA 2006).  "In the absence of actual

damages, the FDUTPA permits any 'aggrieved party' to pursue injunctive relief." *Farmer v. Humana, Inc.*, __ F. Supp. 3d ___, No. 8:21-cv-1478-MSS-SPF, 2022 WL 732126, at * (M.D. Fla. Jan. 25, 2022) (quotations and citation omitted).  "Put plainly, a plaintiff is 'aggrieved' under FDUTPA when the deceptive conduct alleged has caused a non-speculative injury that has affected the plaintiff beyond a general interest in curbing deceptive or unfair conduct."  *Id.* (quotations and citation omitted).

Plaintiff avers that "Defendants' deceptive practices have injured Plaintiff and Plaintiff has no adequate remedy at law for the damages caused thereby." (Doc. 1 at ¶ 100).[5]  Plaintiff has shown it was "aggrieved" by Defendants' deliberate infringement by alleging it "lost control over its valuable goodwill," and Defendants' infringement caused consumer confusion (Doc. 1 at ¶ 64).  An example is Defendants' negative glassdoor.com

---

[5] In its default judgment motion, Plaintiff seeks "actual damages, plus attorney's fees and court costs" for Defendants' FDUTPA violations (Doc. 26 at 10).  To the extent Plaintiff seeks actual damages, its FDUTPA claim fails. *See Ghost Controls, LLC v. Gate1Access LLC*, 5:20-cv-288-Oc-37PRL, 2020 WL 8309717, at *6 (M.D. Fla. Oct. 16, 2020) (recommending denial of plaintiff's request for FDUTPA damages contained in default judgment motion because damages were not specified), *report and recommendation adopted*, 2021 WL 50334 (M.D. Fla. Jan. 6, 2021).  Generally, FDUTPA claims rise or fall with the success of a related trademark infringement claim.  *See Natural Answers, Inc. v. SmithKline Beecham Corp.*, 529 F.3d 1325, 1328 (11th Cir. 2008).  But here, assuming Plaintiff satisfied the first two elements of its FDUTPA claim, it did not sufficiently allege damages (Doc. 1 at ¶¶ 97-100).  FDUTPA permits a plaintiff to recover "actual damages," which courts define as "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties."  *Rodriguez v. Recovery Performance & Marine*, LLC, 38 So.3d 178, 180 (Fla. 3d DCA 2010).  In Count V, Plaintiff alleges Defendants "trad[ed] on Plaintiff's reputation and good will." (Doc. 1 at ¶ 93).  *See* Fla. Stat. § 501.211(2).  But lost profits or harm to a plaintiff's reputation are not "actual damages."  *Sub-Zero, Inc. v. Schuster*, No. 18-20890-Civ-Scola, 2018 WL 8369106, at *4 (S.D. Fla. Sept. 4, 2018).  In fact, Plaintiff requests statutory damages for Defendants' Lanham Act violations because it could not calculate its actual damages.

review posted by one of their former employees on Plaintiff's page (*Id.* at ¶ 38).  As Plaintiff has established Defendants' liability for trademark infringement and adequately alleged a detrimental impact of the infringement on Plaintiff's business and reputation, Plaintiff is entitled to default judgment on its FDUTPA claim for injunctive relief.

F.  <u>Defendant Saterbo's liability</u>

Plaintiff also seeks a default judgment on all counts against Defendant Saterbo individually as the manager of both limited liability company Defendants (Doc. 1 at ¶¶ 50-53).  To prevail against Saterbo on its Lanham Act counts, Plaintiff must show he "actively and knowingly caused the infringement." *Edmondson v. Velvet Lifestyles, LLC*, No. 20-11315, _ F.4th __, 2022 WL 3098100, at *4 (11th Cir. Aug. 4, 2022) (quoting *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991)).  As the Eleventh Circuit explains, "[t]he individual liability standard [under the Lanham Act] does not ask whether the individual participated or engaged in some infringing act; instead, it asks whether he actively participated as a moving force in the decision to engage in the infringing acts, or otherwise caused the infringement as a whole to occur." *Id.* Under this standard, a "corporate officer who directs, controls, ratifies, participates in, or is the moving force behind the infringing activity" is personally liable. *Id.* (quoting *Babbit*, 38 F.3d at 1184).  To hold an individual liable under the FDUTPA, a plaintiff must show that the individual was a "direct participant in the improper dealings." *N. Am. Clearing, Inc. v. Brokerage Computer Sys., Inc.*, 666 F.Supp.2d 1299, 1311 (M.D. Fla. 2009) (citation and quotations omitted).

Here, Plaintiff alleges Saterbo is the manager of both limited liability company Defendants, and it has submitted supporting evidence (Doc. 1 at ¶ 11-13; Doc. 26, Exh. 2). Through his default, Saterbo admits he "directed his co-Defendants to use or continue using the infringing Nurses PRN and The Nurses PRN of Florida marks and related domain names, assisted them to do so, or encourage[d] them to do so." (Doc. 1 at ¶ 52). Saterbo is individually liable for his co-Defendants' infringing activities.

### IV.   Remedies

#### A. <u>Statutory Damages</u>

Having established Defendants' liability on all counts, the next question is the appropriate remedy. Plaintiff asks the Court to award statutory damages for Defendants' counterfeiting and cybersquatting violations. Damages are not admitted by default. *Wallace v. The Kiwi Grp., Inc.*, 247 F.R.D. 679, 681 (M.D. Fla. 2008) (citation omitted). Although a court may hold an evidentiary hearing to determine damages, a hearing is not required if the "amount claimed is a liquidated sum or one capable of mathematical calculation," as long as "all essential evidence is already of record." *S.E.C. v. Smyth*, 420 F.3d 1225, 1231, 1232, 1233 n.13 (11th Cir. 2005) (citation and quotations omitted); *see also Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (a hearing is unnecessary if sufficient evidence is submitted to support the request for damages).

The court "may award statutory damages without holding an evidentiary hearing based upon affidavits and other documentary evidence if the facts are not disputed." *Michael Kors L.L.C. v. AirTnMax Store*, No. 20-cv-62455-BLOOM/Valle, 2021 WL

2592367, at * 6 (S.D. Fla. Feb. 16, 2021) (citation and quotation omitted); *see also Petmed Express*, 336 F.Supp. 2d at 1217.   Indeed, "[w]here damages are difficult to ascertain, injunctive relief may also be awarded in a default situation, without an evidentiary hearing." *Nat'l Staffing Sols., Inc. v. Young Holdings & Invs., LLC*, No. 8:20-cv-1011-T-02JSS, 2020 WL 6587246 at *1 (M.D. Fla. Aug. 13, 2020); *see* Fed. R. Civ. P. 55(b)(1).   As always, a court must assure that a legitimate basis exists for any damage award it enters.  *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003).

In an anti-counterfeiting action under the Lanham Act, "the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits . . . an award of statutory damages" of "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just."   15 U.S.C. § 1117(c)(1).   In cases of willful infringement, the court may award statutory damages of "not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(2).   District courts maintain broad discretion in determining the amount of statutory damages to award.  *PetMed Express*, 336 F. Supp. 2d at 1219.  Statutory damages should serve the dual purposes of compensating the plaintiff and sanctioning and deterring infringers.  *Id.* at 1220-21 ("Statutory damages under § 1117(c) are intended not just for compensation for losses, but also to deter wrongful conduct.").

The Lanham Act "does not provide guidelines for courts to use in determining an appropriate award." *Nike, Inc. v. Austin*, No. 6:09-cv-796-Orl-28KRS, 2009 WL 3535500,

at *4 (M.D. Fla. Oct. 28, 2009). To determine the appropriate amount of damages, courts look to the Copyright Act's statutory damages provision for guidance. *Id.* Under the Copyright Act, courts may consider: (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant. *Id.*

Here, to remedy Defendants' counterfeiting violations, Plaintiff seeks to recover $5,000 in statutory damages against Defendants. Plaintiff has demonstrated that Defendants infringed Plaintiff's registered marks by using the counterfeit marks The Nurses PRN of Florida and Nurses PRN to advertise and market staffing services through thenursesprnoffla.com, nursesprn.net, Instagram, and Facebook. Further, despite receiving Plaintiff's cease-and-desist letters and being served with Plaintiff's Complaint, Defendants continued its infringing activities. This militates for departing from the statutory base of $1,000 per mark.

Given the facts, a statutory damages award of $5,000 ($2,500 per counterfeit mark) is reasonable under the circumstances – especially considering Defendants' default and the distance between the award and the statutory ceiling – and serves as a meaningful deterrent to Defendants and other potential infringers. *See PetMed Express*, 336 F. Supp. 2d at 1220-21 (collecting cases and noting "[s]everal courts have found statutory damages [e]specially appropriate in default judgment cases."); *cf. Ghost Controls*, 2020 WL 8309717,

at *6 (plaintiff "not automatically entitled to the maximum amount of statutory damages just because it has shown that the defendants acted willfully.").

Plaintiff also seeks statutory damages of $10,000 under 15 U.S.C. § 1117(d) for Defendants' violations of the ACPA.  Section 1117(d) allows a plaintiff to recover, in lieu of actual damages, an award of statutory damages between $1,000 and $100,000 per domain name. 15 U.S.C. § 1117(d).  As explained, Defendants registered their infringing domains in bad faith in violation of 15 U.S.C. § 1125(d).  Due to Defendants' intentional and misleading conduct, and for similar reasons to those entitling Plaintiff to statutory damages under 15 U.S.C. § 1117(c) for counterfeiting, Plaintiff is entitled to the $10,000 in statutory damages it seeks ($5,000 per infringing domain) under 15 U.S.C. § 1117(d) for cybersquatting.  Courts in this circuit have awarded damages more than the ACPA's statutory minimum in similar cases.  *See, e.g., Petmed Express*, 336 F.Supp.2d at 1222 ($50,000 for each of two infringing domain names*); Punch Clock, Inc. v. Smart Software Dev.*, 553 F.Supp.2d 1353, 1359 (S.D. Fla. 2008) ($100,000 for single infringing domain name); *WFTV, Inc. v. Maverik Prod. Ltd. Liab. Co.*, No. 6:11-cv-1923-Orl-28KRS, 2013 WL 3119461, at *14 (M.D. Fla. June 18, 2013) ($20,000 for single infringing domain name); *K.S.R. X-Ray Supplies, Inc., v. Se. X-Ray, Inc.*, No. 09-81454-Civ, 2010 WL 4317026, at *7 (S.D. Fla. Oct. 25, 2010) ($10,000 for one infringing domain name where no evidence of ongoing wrongful conduct).

## B.  Injunctive Relief

Plaintiff seeks an injunction under 15 U.S.C. § 1116(a), which authorizes a district court to issue an injunction "according to the principles of equity and upon such terms as

the court may deem reasonable" to prevent trademark law violations, and Fla. Stat. § 501.211, which entitles "anyone aggrieved" by a FDUTPA violation to an injunction against the violator.   A plaintiff is entitled to permanent injunctive relief where it demonstrates: (1) it has suffered irreparable injury; (2) remedies available at law (such as monetary damages) are inadequate to compensate for the injury suffered; (3) the balance of hardships favors an equitable remedy; and (4) issuance of an injunction would not disserve the public interest.   *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). Injunctive relief is an available remedy even in default judgment cases and can be awarded to a plaintiff without a hearing. *PetMed Express*, 336 F. Supp. 2d at 1217; *see also Nygard v. Jasper*, No. 8:15-cv-1939-T-33EAJ, 2016 WL 9526666, at *5 (M.D. Fla. Jan. 4, 2016) ("Even in a default judgment case, injunctive relief is appropriate pursuant to the Lanham Act and common law"), *report and recommendation adopted,* 2016 WL 9526575 (M.D. Fla. Jan. 25, 2016).

Taking Plaintiff's well-pleaded allegations as true, a permanent injunction against Defendants' future infringement is warranted.   Plaintiff has shown it has suffered irreparable injury and that Defendants' future infringement would cause continued irreparable injury of an unknowable extent. *See Chanel, Inc. v. Mesadieu*, No. 6:08-cv-1557-Orl-31KRS, 2009 WL 2496586, at *8 (M.D. Fla. Aug. 12, 2009) ("The immediate, ongoing violation of Chanel's right to exclude third parties from using their protected trademarks is not compensable through monetary remedies."); *Hunter*, 2017 WL 1987247, at *9 (finding monetary damages inadequate to compensate plaintiff's previous and future losses because of "[t]he possibility of future infringement by [defendant], and the

seemingly unknowable extent of that infringement"); *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509-10 (S.D. Fla. 1995) ("[I]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement").  "Absent entry of a permanent injunction, a plaintiff's goodwill will be irreparably harmed by the continued sale of goods that are mistaken for the plaintiff's authorized products."  *Nat'l Staffing*, 2020 WL 6587246, at *2 (citation and quotations omitted).

The balance of hardships also favors Plaintiff.  Defendants' potential loss of the revenue generated by their infringing conduct is outweighed by the threatened ongoing injury to Plaintiff.  Last, the issuance of an injunction is in the public's interest because it will prevent the confusion created by Defendants' infringing marks.  Plaintiff is entitled to a permanent injunction enjoining and restraining Defendants from using the infringing marks The Nurses PRN of Florida and Nurses PRN in identifying or marketing their services.[6]

Plaintiff also requests an order directing Defendants to transfer the Defendants' infringing domain names to it under 15 U.S.C. § 1125(d).  The ACPA expressly empowers the Court to "order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark."  15 U.S.C. § 1125(d)(1)(C).  Attached to Plaintiff's default judgment motion are the ICANN WHOIS search results that show the registrant, administrative contact, and technical contact for nursesprn.net is Defendant

---

[6] Plaintiff is also entitled to an order directing Defendants to destroy any infringing articles under 15 U.S.C. § 1118.

Pro Med Healthcare Services, LLC, the registration was created in 2006, and it expires in 2027 (Doc. 26, Exh. 3).  Plaintiff also shows that thenursesprnofflorida.com domain was created in 2017, and it expired in May 2022 (*Id.*).[7]  The registrant, administrative contact, and technical contact are listed as "Private" and the organization is "Domains by Proxy, LLC" (*Id.*).  Through their default, Defendants admit that nursesprn.net lists some of the same contact information and content as thenursesprnofflorida.com (*see* Doc. 1 at ¶¶ 23-36).  Under 15 U.S.C. § 1125(d), Plaintiff is entitled to an order directing Defendants and their domain registrar(s) to transfer the domain names thenursesprnofflorida.com and nursesprn.net to Plaintiff.

C.  <u>Attorney's Fees and Costs</u>

Plaintiff seeks attorney's fees and costs under 15 U.S.C. § 1117(a), which contemplates an award of attorney's fees and costs for counterfeiting and cybersquatting violations in "exceptional cases," and FDUTPA, Fla. Stat. § 501.2105(a), which gives the court discretion to award attorney's fees and court costs to the prevailing party.

Regarding Defendants' Lanham Act violations, Plaintiff contends the Court should award it fees "absent extenuating circumstances." (Doc. 26 at 12).  But this is not the standard.  The statute allows for attorney's fees in "exceptional" counterfeiting and cybersquatting cases.  15 U.S.C. § 1117(a).  The Eleventh Circuit has concluded that to qualify as an "exceptional case" under the Lanham Act "requires only that a case 'stands out from others,' either based on the strength of the litigating positions or the manner in which the case was litigated."  *Tobinick v. Novella*, 884 F.3d 1110, 1118 (11th Cir. 2018)

---

[7]  Plaintiff has not submitted information regarding whether this domain is still active.

(finding that exceptional cases standard from Patent Act applies to cases brought under Lanham Act) (quoting *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)).

In deciding whether a case is exceptional, courts consider the totality of the circumstances, including "'frivolousness, motivation, objective unreasonableness (both in factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence[.]'" *Sub-Zero, Inc.*, 2018 WL 8369106, at * 5 (quoting *Octane Fitness*, 572 S. Ct. at 554, n.6). "There is no precise rule or formula for making these determinations," and courts have fairly broad discretion in finding what constitutes an "exceptional case." *Octane Fitness*, 572 U.S. at 554 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994)).

Here, the facts Plaintiff presented in its Complaint warrant entry of default judgment as to its claims, but "they do not necessarily compel a finding that this case is exceptional." *BMW of N. Am., LLC v. Eurocar Tech., LLC*, No. 6:13-cv-1215-Orl-18DAB, 2014 WL 10748119, at *3 (M.D. Fla. Jul. 15, 2014) (applying *Octane Fitness* before *Tobinick* adopted its standard). This case involves allegations of deliberate trademark infringement. But this is not enough to justify fee shifting under the statute. *See Sub-Zero*, 2018 WL 8269106, at *6 (granting default judgment as to trademark infringement claims but denying request for attorney's fees and finding case is not exceptional under 15 U.S.C. §

1117(c)); *Nat'l Staffing*, 2020 WL 6587246, at *2 (same).   Plaintiff is not entitled to attorney's fees under the Lanham Act.[8]

Plaintiff also requests fees and costs under FDUTPA.   FDUTPA provides that a prevailing party "may receive [its] reasonable attorney's fees and costs from the nonprevailing party" after "judgment in the trial court and exhaustion of all appeals, if any."   Fla. Stat. § 501.2105(1).   To be considered a prevailing party under FDUTPA, "a party must prevail in the litigation; meaning that party must receive a favorable judgment from a trial court with regard to the legal action, including the exhaustion of all appeals." *Chow v. Chau*, 640 F. App'x 834, 838 (11th Cir. 2015).   The statute "does seem to contemplate that the [attorney's fees] motion be filed after the expiration of the appeal period." *Am. Registry, LLC v. Hanaw*, 2015 WL 5687693, at *3 (M.D. Fla. Sept. 25, 2015); *see also Procaps, S.A. v. Patheon Inv.*, 157 F.Supp.3d 1199, 1200 (S.D. Fla. 2016).   Courts within the Eleventh Circuit "have taken that language at face value and 'concluded that filing such a motion is not proper until the exhaustion of all appeals.'" *Am. Registry*, 2015 WL 5687693, at *3; *see also Citibank (S. Dakota) N.A. v. Nat'l Arbitration Council, Inc.*, 2006 WL 2691528, at *7 (M.D. Fla. Sept. 19, 2006) (denying without prejudice a FDUPTA-based motion for fees and costs, subject to renewal after either the expiration of the time

---

[8] "Costs of the action," however, may be awarded under the Lanham Act for violations of 15 U.S.C. § 1125(d).   *See* 15 U.S.C. § 1117(a).   Because the statute does not specify which costs are recoverable, the Court is limited by 28 U.S.C. § 1920.   *See Nat'l Staffing Solutions*, 2020 WL 6587246, at *2 (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987)).   The court filing fee and service of process fees are recoverable but not the costs of postage.   *See* 28 U.S.C. § 1920; *Duckworth v. Whisenant*, 97 F.3d 1393, 1399 (11th Cir. 1996) (postage unrecoverable).   Thus, Plaintiff's costs in the amount of $502.00 are recoverable ($402.00 in filing fees and $100 for process services) (Doc. 26, Exh. 1).

to appeal or the conclusion of an appeal); *M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 30 F.3d 113, 115 (11th Cir. 1994) (explaining that FDUTPA "expressly includes the culmination of the appellate process in its definition of a prevailing party" to award fees and costs).

Here, Plaintiff is entitled to a default judgment on its FDUTPA claim for equitable relief, as explained above.  But it is not yet the prevailing party for purposes of FDUTPA's attorney's fees provision because the deadline to file an appeal has not yet passed, and this is a prerequisite to qualify as a prevailing party.  *See Kipu Sys. LLC v. Zencharts LLC*, No. 17-24733-Civ-Williams/Torres, 2021 WL 1891710, at *6-7 (S.D. Fla. Apr. 6, 2021), *report and recommendation adopted,* 2021 WL 4505527 (S.D. Fla. Sept. 30, 2021).  At this juncture, Plaintiff's request for fees under FDUTPA should be denied without prejudice subject to renewal (under Local Rule 7.01, M.D. Fla.) after the time to appeal has expired.

## V.     Conclusion

It is hereby

**RECOMMENDED:**

1.     Plaintiff's Motion for Default Judgment Against All Defendants (Doc. 26) be GRANTED in part and DENIED in part, Plaintiff be awarded $15,000.00 in statutory damages and $502.00 in costs under 15 U.S.C. § 1117, Plaintiff's request for attorney's fees under 15 U.S.C. §1117(a) be denied, and Plaintiff's request for attorney's fees under FDUTPA be denied without prejudice.

2.     Defendants be permanently enjoined from infringing the PRN Marks.

3.      Defendants be ordered to destroy any infringing articles under 15 U.S.C. § 1118, and to transfer the domain names thenursesprnofflorida.com and nursesprn.net to Plaintiff under 15 U.S.C. § 1125(d).

**IT IS SO REPORTED** in Tampa, Florida on August 16, 2022.

.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to the proposed findings and recommendations or request an extension of time to do so.  28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1.  Failure of any party to timely object under § 636(b)(1) waives that party's right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions in this Report and Recommendation.  11th Cir. R. 3-1.